UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ORHAN YAVUZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-CV-0586-CVE-SAJ |
| | ) | |
| 61 MM, LTD., an Oklahoma limited | ) | |
| partnership; and 61 MM, CORP., an | ) | |
| Oklahoma corporation, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADI KAMEL MOHAMED and FPM S.A., | ) | |
| a corporation d/b/a FPM FINASTATE | ) | |
| PROJECTS MANAGEMENT S.A., a Swiss | ) | |
| corporation, SIGOFINE S.A., a Panamanian | ) | |
| corporation, EUROEAST CORP. a/k/a/ | ) | |
| EURO-EAST CORP., a Panamanian | ) | |
| corporation, | ) | |
| | | |
| Additional Party | | |
| Defendants. | | |

## OPINION AND ORDER

Now before the Court is Plaintiff's Motion to Reconsider (Dkt. # 132). Plaintiff asks the

Court to amend its May 22, 2006 Order (Dkt. # 131) directing plaintiff to secure and obtain a

supersedeas bond in the amount of $1,800,000. Specifically, plaintiff argues that the Court should

apply a different model for calculating the appropriate amount of the bond based on a wrongful

delay in the sale of property rather than based on the value of anticipated lost sales.

"The Federal Rules of Civil Procedure do not recognize a 'motion to reconsider.' Instead

the rules allow a litigant subject to an adverse judgment to file either a motion to alter or amend the

judgment pursuant to Fed. R. Civ. P. 59(e) or a motion seeking relief from the judgment pursuant

to Fed. R. Civ. P. 60(b)." <u>Van Skiver v. United States</u>, 952 F.2d 1241, 1243 (10th Cir. 1991).  A

Rule 59(e) motion to alter or amend the judgment is warranted where there is "(1) an intervening

change in the controlling law, (2) new evidence previously unavailable, or (3) the need to correct

clear error or prevent manifest injustice." <u>Servants of the Paraclete v. Does</u>, 204 F.3d 1005, 1012

(10th Cir. 2000) (internal citation and quotation marks omitted).  A Rule 59(e) motion "is not

appropriate to revisit issues already addressed or advance arguments that could have been raised in

prior briefing." <u>Id.</u>  Plaintiff fails to introduce any new controlling law, any new evidence, or any

extraordinary circumstances so as to demonstrate clear error or manifest injustice.  Accordingly, the

Court denies plaintiff's motion to reconsider under Rule 59(e) and liberally construes it as a Rule

60(b) motion for relief from a court order.

Rule 60(b) permits a party to seek relief from a final judgment, order, or proceeding due to

"(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by

due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3)

fraud, misrepresentation, or other misconduct of an adverse party; . . . or (6) any other reason

justifying relief from the operation of the judgment."  Fed. R. Civ. P. 60(b).  "Rule 60(b) relief is

extraordinary and may only be granted in exceptional circumstances. . . .  Parties seeking relief

under Rule 60(b) have a higher hurdle to overcome because such a motion is not a substitute for an

appeal." <u>Zurich N. Am. v. Matrix Serv., Inc.</u>, 426 F.3d 1281,  1289 (10th Cir. 2005).  The Court has

substantial discretion in connection with a Rule 60(b) motion. <u>Pelican Production Corp. v. Marino</u>,

893 F.2d 1143, 1146 (10th Cir. 1990).  A judicial mistake, as construed by the Tenth Circuit for

purposes of Rule 60(b)(1), occurs where "the judge has made a substantive mistake of law or fact

in the final judgment or order." <u>Cashner v. Freedom Stores, Inc.</u>, 98 F.3d 572, 576 (10th Cir. 1996).

2

This litigation stems from plaintiff's investments with defendants starting in the 1980s. According to plaintiff, he gave defendants nearly $1,000,000 for various investment purposes including a direct investment in real property in Tulsa County, Oklahoma ("the property"). Plaintiff accuses defendants of misappropriating his wealth. Among plaintiff's claims is a claim for a constructive trust in the property, which continues to cloud the title to the property and render title to the property unmarketable.[1]

On September 1, 2004, the Court dismissed this action for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3), and ordered plaintiff to clear the title to the property. Dkt. # 64. Plaintiff appealed the dismissal on September 30, 2004. Dkt. # 68. Plaintiff sought to preserve his cloud on the title and, therefore, asked the Court to set an evidentiary hearing to establish the amount of supersedeas bond to be posted by plaintiff to stay the enforcement of the Court's September 1, 2004 Order. Dkt. # 85. The Court granted plaintiff a hearing, during which defendants approximated the total value of the property at $4,300,000. However, plaintiff's expert witness, Mr. Tankersly, testified that he had appraised the property at $3,208,417, with a selling cost of $224,589. Dkt. # 135. Mr. Tankersly also estimated that, with aggressive marketing, defendants could sell the property over the course of three years. Id. Following the hearing, the Court denied plaintiff the privilege of posting a supersedeas bond. Dkt. # 111. See Poplar Grove Planting and Refinery Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979) ("[A] supersedeas bond is a privilege extended the judgment debtor as a price of interdicting the validity of an order . . . ."). Plaintiff appealed the denial of bond. Dkt. # 112.

---

[1]     Defendants' title to the disputed land was clear prior to plaintiff filing this lawsuit.

On September 30, 2005, the Tenth Circuit Court of Appeals granted plaintiff permission to post a supersedeas bond and remanded for determination of "the appropriate amount of the bond." Dkt. # 120.  On remand, the Court ordered the parties to stipulate to the amount of the bond or brief the issue.  Dkt. # 124.  After reviewing the briefs, the Court concluded that plaintiff should secure a supersedeas bond in the amount of $1,800,000, equal to roughly "one-half of the projected value of the sale of the disputed property."  Dkt. # 131.  The Court directed plaintiff to secure and obtain the bond, pursuant to Fed. R. Civ. P. 62(d), to protect defendants from the possible loss resulting from their inability to sell the land pending the appeal.  Id.

The Court properly determined that the value of the supersedeas bond should reflect the amount of the gross revenues of the tract of land to be sold.  A supersedeas bond is meant to "secure an appellee from loss resulting from the stay of execution and . . . a full supersedeas bond should be the requirement in normal circumstances."[2] Miami Intern. Realty Co. v. Paynter, 807 F.2d 871, 873 (10th Cir. 1983) (citing Poplar Grove, 600 F.2d at 1191; Federal Prescription Service, Inc. v. American Pharmaceutical Association, 636 F.2d 755, 760 (D.C. Cir. 1980)); see Esposito v. Federal Deposit Ins. Corp., 644 F. Supp. 276 (E.D.N.Y. 1986) ("The purpose of the bond required to be posted by plaintiff is to indemnify defendant against any damages he may sustain if the notice of pendency is not cancelled.") (citations omitted); Hurlbut v. Morrow, 55 P.3d 455, 465 (Okla. Civ. App. 2002) (accounting for "prospective loss" in setting the amount of the bond).  Plaintiff's actions, which have clouded the title to the property for nearly four years, continue to adversely impact defendants' ability to sell any of the real estate.  The Court's calculation of the supersedeas bond

---

[2]     Plaintiff does not argue abnormal circumstances, such as insufficient assets to post a supersedeas bond.

4

based on defendants' lost sales over the period of the appeal, using plaintiff's more conservative estimate of the value of the land, is well within its discretion.  See <u>Paynter</u>, 807 F.2d at 873 (recognizing that district courts have "inherent discretionary authority in setting supersedeas bonds.").

However, upon review of the record, the Court finds that it failed to properly subtract the selling cost from the property value prior to calculating the amount of the bond, and it improperly relied on the figures stated in Defendants', 61 MM, Ltd. and 61 MM Corp., Brief on Supersedeas Bond (Dkt. # 127), which misquoted Mr. Tankersly's appraisal as roughly $3,600,000 rather than $3,208,417.[3]  Mr. Tankersly estimated the selling cost for the property at $224,589, resulting in a net sales figure of $2,983,828.  See Dkt. # 135.  In the underlying order, the Court determined that the amount of the bond should be based on an appeal period of eighteen months,[4] which is one-half of the three-year market time contained in Mr. Tankersly's opinion.  Accordingly, the revised amount of the supersedeas bond is one-half the value of the property net of selling cost, as estimated by plaintiff's expert, or $1,491,914.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reconsider (Dkt. # 132) is **granted in part** and **denied in part**; it is **granted** insofar as the amount of the supersedeas bond is decreased from $1,800,000 to $1,491,914; it is **denied** with respect to plaintiff's requested formula for calculating the amount of the supersedeas bond.  Accordingly, **plaintiff is directed to secure and obtain a supersedeas bond in the amount of $1,491,914.**

---

[3]   For the purpose of calculating the amount of the supersedeas bond, defendants stipulated that it was appropriate to use Mr. Tankersly's appraisal of the property. Dkt. # 127, at 5.

[4]   Plaintiff does not dispute that an average appeal period is 18 months. Dkt. # 132, at 3.

**IT IS FURTHER ORDERED** that defendants' motion for contempt (Dkt. # 84) is **stayed pending outcome of the appeal**.


**DATED** this 28th day of July, 2006.

CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT